IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**GINA B.[1],**

      **Plaintiff,**

                                  Civil Action 3:25-cv-00018
                                  Judge Walter H. Rice
                                  Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

      Plaintiff, Gina B., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits ("DIB"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 10), Plaintiff's Reply (ECF No. 11), and the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that the Court **SUSTAIN** Plaintiff's Statement of Errors (ECF No. 8) and **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

I. BACKGROUND

Plaintiff applied for DIB on December 21, 2022, alleging an amended onset date of disability as of August 27, 2021,[2] due to acid reflux, diabetes, bipolar disorder with psychosis, PTSD [Post–Traumatic Stress Disorder], and depression. (R. at 219-225, 290.) Plaintiff's application was denied initially in March 2023 and upon reconsideration in November 2023. (R. at 93-101, 102-110.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 128-29.) On May 1, 2014, Plaintiff, who was represented by counsel, appeared and testified at a hearing held by an administrative law judge. (R. at 44-65.) On August 14, 2024, Stuart Adkins (the "ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 14-43.) The Appeals Council denied Plaintiff's request for review on November 22, 2024. (R. at 1-6.) This matter is properly before this Court for review.

II. RELEVANT RECORD EVIDENCE

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, and testimony as to her conditions and resulting limitations. Given the claimed error raised by Plaintiff, rather than summarizing that information here, the Court will refer and cite to it as necessary in the discussion of the parties' arguments below.

III. ADMINISTRATIVE DECISION

On August 14, 2024, the ALJ issued his decision. (R. at 14-43.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through

---

[2] Plaintiff previously filed for DIB on October 22, 2018, and ALJ Kevin R. Barnes issued a decision on August 26, 2021, finding that Plaintiff was not disabled. (R. at 66-91.)

December 31, 2024.  (R. at 19.)  At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 19, 2018, the alleged onset date.  (R. at 20.)  The ALJ found that Plaintiff had the following severe impairments: type II diabetes mellitus, gastroesophageal reflux disease (GERD), ulnar neuropathy, asthma, obesity, bipolar disorder with psychosis, posttraumatic stress disorder (PTSD), and depression.  (R. at 20.) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) subject to the following limitations: 1) No climbing of ladders, ropes, or scaffolds; 2) Frequently climbing ramps and/or stairs; 3) Occasional crawling; 4) Frequent handling and fingering with the right upper extremity; 5) No concentrated exposure to environmental irritants (including fumes, odors, dust, and gases), poorly ventilated areas, and industrial chemicals; 6) No exposure to hazardous

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can [Plaintiff] perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> machinery or unprotected heights; 7) Work is limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements; 8) Work can involve only simple, work-related decisions; 9) Work can involve few, if any, work place changes; and 10) Occasional interaction with the public and only occasional interaction with co-workers with no tandem tasks.

(R. at 24.)

At step four of the sequential process, the ALJ determined that Plaintiff has no past relevant work based on the VE testimony on the updated work reports provided by Plaintiff in connection with the current application. (R. at 37-38.) At step five, relying on the VE's testimony, and the ALJ concluded that, considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as a kitchen helper, grocery bagger or laborer, stores. (R. at 38-39.) The ALJ therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since October 19, 2018. (R. at 39.)

**IV.    STANDARD OF REVIEW**

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

4

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

V. ANALYSIS

Plaintiff sets forth one straightforward claim of error: the ALJ failed to build an accurate and logical bridge between the evidence and his conclusion that Plaintiff can have unlimited interaction with supervisors at work. (ECF No. 8 at PageID ##: 1371-1372.)

As Plaintiff explains, the ALJ found that Plaintiff is limited to occasional interaction with co-workers and the public but inexplicably omitted any limitation regarding Plaintiff's ability to interact with supervisors. (*Id.* at PageID #: 1371, citing to R. at 23.) According to Plaintiff, the

5

ALJ's omission "does not make sense because there is no apparent reason why [Plaintiff] would have difficulty interacting only with the public and co-workers, but could have unlimited interaction with authority figures like supervisors." (*Id.* at PageID ##: 1371-1372.)  The Commissioner counters that the ALJ properly evaluated the evidence, including the opinions of the state agency psychologists, and appropriately addressed Plaintiff's social interaction restrictions. (ECF No. 10 at PageID ##: 1380-1385.)

As noted above, the ALJ found that Plaintiff suffered from several severe mental health impairments, including bipolar disorder with psychosis, posttraumatic stress disorder (PTSD), and depression.  With this in mind, the starting point for analysis is the record evidence relating to these mental health impairments as they relate to Plaintiff's interactions in the workplace.  In a psychological evaluation dated March 9, 2023, Tawnee Tanner, Psy.D, described Plaintiff's abilities and limitations in responding appropriately to supervision and to coworkers in a work setting as follows:

> The claimant reported that she has one friend that contacts her, though she often does not respond. She also indicated that she tended to avoid female coworkers, and feels she gets along better with males than females. The claimant is likely to be anxious in interpersonal interactions, and to avoid potential conflicts.

(R. at 778; PageID #: 799.)  Dr. Tanner further described Plaintiff's abilities and limitations in responding appropriately to work pressures in a work setting, concluding that Plaintiff was likely to be easily overwhelmed or anxious when faced with stressors or pressure and to struggle with responding appropriately at times when her mental health symptoms were heightened.  (*Id.*)

The ALJ found Dr. Tanner's opinion "somewhat persuasive," explaining:

> The opinion of Dr. Tanner is vague and is qualified upon if she has an exacerbation of symptomology (Exhibit B6F/5). Nevertheless, the opinion is generally supported by [Plaintiff]'s performance on this examination, which demonstrated adequate functioning despite some slight abnormalities (Exhibit B6F). The opinion is also generally supported by and consistent with record (Exhibits B1F-B10F). Despite the alleged severity of [Plaintiff]'s subjective complaints, [Plaintiff] did not require any emergency or urgent care treatment except for medication refills (Exhibits B1F-B10F). She consistently demonstrated adequate functioning on mental status examinations despite sometimes presenting with mood and/or affect abnormalities (Exhibits B1F-B10F). For example, she consistently presented as cooperative (e.g. Exhibit B2F/102, 302; B8F/2, 16; B9F/13; B10F/41, 100, 145, 271). Recent and remote memory, along with attention and concentration, were usually intact, and her fund of knowledge was generally normal (e.g. Exhibits B2F/103, 303; B8F/16-17; B10F/101, 146, 272). Insight was at least fair (e.g. Exhibits B2F/103, 303; B8F/17; B9F/13; B10F/101, 272). Judgment was usually fair or impulsive, but it was rarely, if ever, considered poor (e.g. Exhibits B2F/103, 260-261, 303; B8F/17; B9F/13; B10F/101, 146, 272). Such findings support an ability to perform work activity when the areas of concern noted by Dr. Tanner are adequately addressed. Her performance on her subsequent examination, along with the opinion of that examiner, also support an ability to perform work activity when the areas of concern are addressed (Exhibit B7F). However, the undersigned notes that the necessary limitations are always applicable and do not require a worsening of mental health symptoms as opined. When giving her the full benefit of the doubt, the record does not suggest improvement as indicated by the qualifiers on this opinion, and the more restrictive residual functional capacity from the prior decision is supported by the totality of the record.  Thus, the opinion of Dr. Tanner is somewhat persuasive.

(R. at 36; PageID #: 52.)

Following a psychological evaluation dated September 21, 2023, consultative examiner Dr. Richard Sexton offered the following relevant functional assessment:

> **Describe the claimant's abilities and limitations in responding appropriately to supervision and to co-workers in a work setting**.
>
> The claimant reported having a limited peer support network and limited social/ recreational activity involvement presently. She indicated she got along with classmates but not with teachers while in school. She got along with co-workers but not supervisors at work. She established a fair relationship with the examiner during the present evaluation. Some limitations in her capacity to conform to social expectations in a work setting are found.

7

<pre>
</pre>

> **Describe the claimant's abilities and limitations in responding appropriately to work pressures in a work setting**.
>
> The claimant reported having problems at times coping with work-related pressures when she was working. She did not report a pattern of inability to adjust to workplace demands. There is a reported history of mental or emotional deterioration in direct response to work exposure. She is expected to have difficulty responding appropriately to workplace pressures.

(R. at 786; PageID #: 807.)

The ALJ found Dr. Sexton's opinion also to be "somewhat persuasive," explaining:

> The opinion of Dr. Sexton, which suggests some improvement in mental functioning, is vague, and it is only somewhat supported by his own examination and the remainder of the record, which suggests that [Plaintiff] is slightly more limited than opined when giving her the full benefit of the doubt with respect to her subjective complaints (Exhibits B1F-B10F). Despite the alleged severity of [Plaintiff]'s subjective complaints, [Plaintiff] did not require any emergency or urgent care treatment except for medication refills (Exhibits B1F-B10F). She consistently demonstrated adequate functioning on mental status examinations despite sometimes presenting with mood and/or affect abnormalities (Exhibits B1F-B10F). For example, she consistently presented as cooperative (e.g. Exhibit B2F/102, 302; B8F/2, 16; B9F/13; B10F/41, 100, 145, 271). Recent and remote memory, along with attention and concentration, were usually intact, and her fund of knowledge was generally normal (e.g. Exhibits B2F/103, 303; B8F/16-17; B10F/101, 146, 272). Insight was at least fair (e.g. Exhibits B2F/103, 303; B8F/17; B9F/13; B10F/101, 272). Judgment was usually fair or impulsive, but it was rarely, if ever, considered poor (e.g. Exhibits B2F/103, 260-261, 303; B8F/17; B9F/13; B10F/101, 146, 272). Such findings support an ability to perform work activity within the limitations opined, but the totality of the record does not suggest the improvement indicated by Dr. Sexton's opinion. [Plaintiff]'s performance at her prior psychological consultative examination further supports the more restrictive findings from the prior decision (Exhibit B6F). As such, the opinion of Dr. Sexton is somewhat persuasive.

(R. at 37; PageID #: 53.)

Non-examining psychologists with the DDD, Dr. David Dietz and Dr. Courtney Zeune, opined at the initial and reconsideration levels, respectively, that Plaintiff was

8

"limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements," involving "only simple, work-related decisions," "few, if any, workplace changes," "[o]ccasional interaction with the public and only occasional interaction with co-workers and no tandem tasks." (R. at 95, 109; PageID ##: 112, 126.)

The ALJ had this to say about the opinions offered by Drs. Dietz and Zeune:

> The opinions of Drs. David Dietz and Courtney Zeune, non-examining psychologists with the DDD, are persuasive as to the residual functional capacity (Exhibits B3A and B4A). Drs. Dietz and Zeune opined [Plaintiff] had mild limitations in understanding, remembering, or applying information with moderate limitations in the remaining "paragraph B" criteria (Exhibits B3A and B4A). They opined that work is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements (Exhibits B3A and B4A). Work can involve only simple, work-related decisions (Exhibits B3A and B4A). Work can involve few, if any, workplace changes (Exhibits B3A and B4A). She was limited to occasional interaction with the public and only occasional interaction with coworkers with no tandem tasks (Exhibits B3A and B4A). They found no change in [Plaintiff]'s mental impairments and adopted the prior findings pursuant to AR 98-4(6) (Exhibits B3A and B4A). The opinions of Drs. Dietz and Zeune are somewhat internally inconsistent, as their residual functional capacity is indicative of moderate limitations in all of the "paragraph B" criteria (Exhibits B3A and B4A). However, their opinions are explained with citations to the record, and their opinions regarding the residual functional capacity are supported by and consistent with the medical record (Exhibits B1F-B10F). Despite the alleged severity of [Plaintiff]'s subjective complaints, [Plaintiff] did not require any emergency or urgent care treatment except for medication refills (Exhibits B1F-B10F). She consistently demonstrated adequate functioning on mental status examinations despite sometimes presenting with mood and/or affect abnormalities (Exhibits B1F-B10F). For example, she consistently presented as cooperative (e.g. Exhibit B2F/102, 302; B8F/2, 16; B9F/13; B10F/41, 100, 145, 271). Recent and remote memory, along with attention and concentration, were usually intact, and her fund of knowledge was generally normal (e.g. Exhibits B2F/103, 303; B8F/16-17; B10F/101, 146, 272). Insight was at least fair (e.g. Exhibits B2F/103, 303; B8F/17; B9F/13; B10F/101, 272). Judgment was usually fair or impulsive, but it was rarely, if ever, considered poor (e.g. Exhibits B2F/103, 260-261, 303; B8F/17; B9F/13; B10F/101, 146, 272). Such findings support an ability to perform work activity within the limitations opined. Her performances on her psychological consultative examinations further support an ability to perform work activity within the limitations opined (Exhibits B6F and B7F).

(R. at 34-35; PageID ##: 50-51.)

As the above excerpts reflect, both Dr. Tanner and Dr. Sexton noted Plaintiff's social challenges in the workplace, not limiting those challenges strictly to interactions with only co-workers.  And the ALJ, in weighing the persuasiveness of those opinions, seemed to conclude that, in giving Plaintiff the benefit of the doubt, more restrictive findings were supported.  In the ALJ's view, such more restrictive findings are taken from the prior decision.   The findings from the prior decision, as adopted by Dr. Dietz and Dr. Zeune, here, did not include limitations as to supervisors.

Against this backdrop, it is possible that the ALJ intended to include "supervisors" in the limitation to "occasional interaction with co-workers."  It is also possible the ALJ did not find such a limitation credible and, therefore, purposely left out any limitation with respect to supervisors.  It is likewise possible that any limitation was simply overlooked regarding supervisors.  In short, it is not clear from the ALJ's discussion whether this exclusion was intentional or merely an oversight.  Any explanation as to why the ALJ believed Plaintiff's mental health symptoms would impact her interactions with the public and her co-workers but would have no impact on her interactions with her supervisors is left entirely to speculation.  Had the ALJ limited Plaintiff to "occasional interaction" without specifying "with coworkers" the Undersigned perhaps reasonably could conclude that the limitation applied in the work setting to both coworkers and supervisors. That, however, simply is not the situation here and courts recognize a distinction between co-workers and supervisors.  *See Hoffer v. Comm'r of Soc. Sec.*, No. 3:20-CV-02871-JRK, 2022 WL 584666, at *5 (N.D. Ohio Feb. 11, 2022), *report and recommendation adopted*, No. 3:20 CV 2871, 2022

WL 580756 (N.D. Ohio Feb. 25, 2022) (recognizing that the ALJ's decision to limit interaction with coworkers does not necessarily limit the interaction with supervisors).

Certainly, in considering medical opinions, when determining the RFC, there is no requirement that the ALJ adopt such opinions "verbatim." *Kearns v. Comm'r of Soc. Sec.*, No. 3:19 CV 01243, 2020 WL 2841707, at *12–13 (N.D. Ohio Feb. 3, 2020), *report and recommendation adopted*, No. 3:19-CV-1243, 2020 WL 2839654 (N.D. Ohio June 1, 2020). Nevertheless, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, *7 (S.S.A. July 2, 1996). Here, it is not clear whether the ALJ accounted for all of the opinions in the RFC, and if he did not, why not. That is, the ALJ's failure to explain how he accounted for the social workplace limitations identified by Dr. Tanner and Dr. Sexton, which were not limited only to co-workers, deprived this court of a 'logical bridge between the evidence on the record and his conclusion." *Flesicher v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). This constitutes error preventing the Undersigned from tracing the ALJ's reasoning. *Hoffer*, 2022 WL 584666, at *6 (citing *Perrine v. Berryhill*, No. 1:18-cv-49, 2019 WL 1331597, at *7 (N.D. Ohio, Mar. 25, 2019)) ("This Court recognizes that the ALJ need not address all limitations; however, where the RFC does not include the limitation, the ALJ must explain why the limitation was not included.")

Notably, the Commissioner, does not address this issue head on, seemingly conceding Plaintiff's point. Moreover, where the Court cannot evaluate the ALJ's reasoning, accepting the Commissioner's attempt to explain this omission would result in the Court "engaging in *post hoc*

11

rationalization, which is prohibited." *Miller v. Comm'r of Soc. Sec.*, No. 1:13–CV–1872, 2014 WL 3950912, at *13 (N.D. Ohio Aug. 12, 2014); *see also Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) ("In reviewing an ALJ's findings and conclusions, this Court shall not 'accept appellate counsel's *post hoc* rationalization for agency action in lieu of [accurate] reasons and findings enunciated by the Board.'") (quoting *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991)); *Garrett v. Berryhill*, No. 3:17-cv-00049, 2018 WL 1521763, at *7 (S.D. Ohio Mar. 28, 2018) (remanding where "the Commissioner improperly relies on *post hoc rationalizations* to substitute for the ALJ's deficient consideration of" an issue).  Accordingly, remand is required.

## VI. CONCLUSION

For these reasons, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors (ECF No. 8) be **SUSTAINED**, that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case under Sentence Four of § 405(g).

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge

and forfeiture of the right to appeal the judgment of the District Court. Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: December 3, 2025 

*/s/ Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE